# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-CR-0045 |
| | : | |
| Plaintiff, | : | JUDGE COLE |
| | : | |
| v. | : | |
| | : | **GOVERNMENT'S TRIAL BRIEF** |
| | : | |
| RICHARD BHOOLAI, | : | |
| | : | |
| Defendant. | : | |

The United States of America, by and through its undersigned counsel, respectfully submits this trial brief in anticipation of certain legal issues that may arise at trial. Defendant Richard Bhoolai ("the defendant") is charged with eight counts of Willful Failure to Account for or Pay Over Employment Tax, in violation of 26 U.S.C. § 7202. To establish a violation of 26 U.S.C. § 7202, the Government must prove the following elements beyond a reasonable doubt:

1. That the defendant was a person who had a duty to collect, truthfully account for, and pay over federal income and Social Security taxes that the defendant was required to withhold from the wages of employees for each of the calendar quarters listed in the Indictment;

2. That the defendant failed to collect or truthfully account for and pay over federal income and Social Security taxes that the defendant was required to withhold from the wages of employees for each of the calendar quarters listed above; and

3. That the defendant acted willfully.

*United States v. Thayer*, 201 F.3d 214, 219-21 (3d Cir. 1999); *United States v. Evangelista*, 122 F.2d 112, 121 (2d Cir. 1997); *see United States v. Blanchard*, 618 F.3d 562, 571-72 (6th Cir. 2010) (rejecting "ability to pay" as a fourth element of 26 U.S.C. § 7202). Trial is scheduled to begin September 16, 2024.

# I. BACKGROUND

The defendant has been the owner and operator of Richie's Fast Food Restaurants, Inc. ("Richie's Restaurants"), an S-Corporation, since approximately 2006. Through this entity, the defendant owned and operated three single-member Limited Liability Company ("LLC") restaurants. The defendant set this business structure up with the assistance of C. Kevin Armstrong, his Certified Public Accountant ("CPA").

As the Chief Executive Officer and sole owner of Richie's Restaurants, the defendant exercised financial control over the business. He controlled its corporate bank accounts, hired and managed employees, and engaged a CPA for the business' accounting and tax return preparation. The defendant also administered payroll for his three restaurants through the Richie's Restaurants entity.

During the first taxable quarter of 2017 through the fourth taxable quarter of 2018, Richie's Restaurants employed between 22 and 34 employees. Richie's Restaurants withheld payroll taxes from its employees' paychecks, which included federal income taxes, Medicare, and social security taxes. However, during this period, the defendant did not pay over the payroll taxes withheld and further did not file the requisite quarterly tax returns to the IRS.

The defendant has a long history of tax non-compliance dating back to as early as 2009. Though he sporadically filed Forms 941 and paid deposits toward the employment taxes he owed, he more frequently did not file Forms 941 and did not pay the associated tax, eventually resulting in a significant tax balance due and owing to the IRS. The defendant previously filed Forms 1040, U.S. Individual Income Tax Returns ("Forms 1040") for tax years 2004 through 2012. However, he last filed a Form 1040 on October 19, 2015, for the 2014 tax year, and did not file a Form 1040 for any tax year thereafter.

He did this despite the advice and admonition of his accountant, who told the defendant of his obligation file tax returns and pay taxes, including employment taxes. Though the defendant initially hired Paychex as a payroll provider upon the advice of his accountant, he stopped paying for these services. The defendant received notices from Paychex informing him of his responsibility to pay over the employment taxes in light of his failure to compensate Paychex. The defendant provided these Paychex notices to his accountant, but persisted in his failure to pay over the tax. After failing to receive payment for services, Paychex began providing the defendant with employee paychecks reflecting net pay including federal employment tax. The defendant switched to a cash payroll from business cash registers, providing these checks to this account with other documents he presented as business expenses. At the same time, the defendant also stopped providing his accountant with other requisite financial records and eventually ceased paying his accountant.

Instead of paying over the payroll taxes, the defendant used large amounts of business funds for personal expenditures, including more than $1,000,000 for gambling. He paid for these expenditures directly from business bank accounts. During this time, the defendant received multiple notices of failure to comply with his tax obligations from two Revenue Officers attempting to collect years' worth of the defendant's unpaid individual and business taxes.

The defendant continued his conduct even after October 2019, when he was made aware he was under criminal investigation for failing to pay employment taxes.

II. **ANTICIPATED LEGAL ISSUES**

    A. <u>**Improper Arguments in Voir Dire, Opening Statement, and Closing Argument**</u>

Defendant should be precluded of offering substantive argument during voir dire and opening statements. Courts do not permit argument or advocacy relating to the facts of the case

3

during voir dire. "The essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel." *United States v. Anderson*, 562 F.2d 394, 398 (6th Cir. 1977). "*Voir dire* is a search for the individual's qualifications to sit as a fair and impartial juror, *i.e.* can the juror be unbiased and fair—not an advocacy phase of the trial." Rhoden v. Morgan, 97 F.3d 1452, 1996 WL 515348, at *7 (6th Cir. 1996) (table). This means "[t]he opportunity to question jurors personally should be used solely to obtain information for the intelligent exercise of challenges. Defense counsel should not intentionally use the voir dire to . . . argue counsel's case to the jury." *Id*. (quoting The American Bar Association Standards for Criminal Justice: Defense Function, Standard 4–7.2 (3d ed. 1993)).

Opening statements are "designed to allow each party to present an objective overview of the evidence intended to be introduced trial." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002). This purpose is a "narrow" one, and an opening statement is best understood as a "brief statement of the issues and an outline of what will be supported with competent and admissible evidence." *United States v. Thomas*, 41 F.3d 1508, 1994 WL 645725, at *4 (6th Cir. 1994) (table). It is not an opportunity for either side to make arguments to the jury. *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996) ("The purpose of an opening statement is to state what evidence will be presented, to make it easier for jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. It is not an occasion for argument."); *see* Benchbook for U.S. District Court Judges, Sixth Ed., 2.07 Preliminary Jury Instructions – Criminal Case, at 96 (March 2013) ("Opening statements are neither evidence nor arguments.").

District courts have "discretionary control over opening statements, including the power to exclude irrelevant matters." *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991). "A

4

district court's supervisory powers over opening statements include the power to interrupt counsel who is presenting argument during opening." *Cox v. Treadway*, 75 F.3d 230, 237 (6th Cir. 1996); *accord United States v. Pits*, 85 F.3d 629, 1996 WL 254655, at *2 (6th Cir. 1996) (table); *see, e.g.*, *Thomas*, 41 F.3d 1508, at *4.

In particular, the defendant should be precluded from any attempts to raise or advocate for jury nullification. There is no constitutional right to a jury nullification instruction. *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992); *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988) (upholding court's response to jury's inquiry about meaning of "jury nullification" that "[t]here is no such thing as valid jury nullification. Your obligation is to follow the instructions of the court as to the law given to you"); *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983); *United States v. Buttorff*, 572 F.2d 619, 627 (8th Cir. 1978). Moreover, a defendant is not entitled to argue nullification to the jury. *See*, *e.g.*, *United States v. Wade*, 962 F.3d 1004, 1012 (7th Cir. 2020) (upholding a district court's exclusion of defense arguments aimed at nullification because "a defendant has no right to argue for the jury to disregard the law"); *United States v. Manzano (In re United States)*, 945 F.3d 616, 628 (2d Cir. 2019) (granting the government a writ of mandamus directing the district court to deny defense counsel's request for leave to argue nullification); *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence."). Generally, when it comes to the concept of nullification, "courts will not encourage this, provide jury instructions acknowledging it, or allow lawyers to argue overtly for it." *Wofford v. Woods*, 969 F.3d 685, 709 (6th Cir. 2020) (citations omitted); *see also United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993). Accordingly, to

the extent the defense attempts to raise this concept through instruction, opening statement, or closing argument, he should be precluded from doing so and the government will seek an appropriate remedial instruction.

Nor should a defendant be allowed to confuse the jury with incorrect interpretations of the law, including the Constitution, the Internal Revenue Code, and Treasury regulations. "In our judicial system the court instructs the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts. The law is neither introduced as evidence nor presented through witnesses at trial." *United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979). Moreover, "it is within the sole province of the court 'to determine the applicable law and to instruct the jury as to that law.'" *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) (quoting *In re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996); *see also United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) ("It is the district court's peculiar province to instruct the jury on the law…"). A defendant is permitted to argue he lacked the requisite willfulness to commit the crimes with which he is charged, based upon a good faith misunderstanding of his duty under the law. *See Cheek v. United States*, 498 U.S. 192, 202 (1991) (government required to rebut claim of good faith misunderstanding or ignorance of the law). However, he is not permitted to blur the line between factual evidence about his state of mind and the actual law. See Fed. R. Evid. 103(c). To the extent the defendant attempts to inject statements, arguments, or instructions with personal disagreements with the law, it would be proper for the Court to issue an instruction to disregard them. *Cheek*, 498 U.S. at 206.

If the defendant chooses to make an opening statement at this trial, and wish to use evidence, exhibits, or demonstratives before the jury during that opening statement, the government would like an opportunity to review those materials in advance of trial. *See, e.g.*,

*Burns*, 298 F.3d at 542–43 (government provided opening statement PowerPoint presentation to defense in advance of trial). This will allow the government to seek pretrial remedy from the Court if necessary, and avoid objection and side-bar argument during the defense's opening statement. The government will, in turn, provide any such materials to the defense if the government decides to use such materials in opening.

### B. **Admissibility of Certain Statements**

The statements by the defendant (whether verbal, email, or otherwise) are admissible as an admission of a party opponent under Federal Rule of Evidence 801(d). Statements made to a defendant or in response to a defendant's statements are admissible as non-hearsay to provide context. *See United States v. Alsop*, 12 F. App'x 253, 259 (6th Cir. 2001) (recorded conversations between defendant and witnesses admissible because they place defendant's statements in context and make them intelligible as admissions); *United States v. Jacob,* 377 F.3d 573, 581 (6th Cir. 2004) (same); *United States v. Valenzuela*, 88 F. App'x 909, 913 (6th Cir. 2004) (same); *United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010) (same). The government will also submit communications from others to the defendant to show the effect they had on the defendant or to show the defendant's knowledge and intent. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay."); *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."). Because these party-opponent admissions and non-hearsay responses are not hearsay by definition, they do not implicate the Confrontation Clause and *Crawford v. Washington. See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to establish the truth

7

of the matter asserted, the Confrontation Clause does not apply."); *accord United States v. Pugh*, 273 F. App'x 449, 455–56 (6th Cir. 2008).

### C. <u>**Admissibility of Self-Authenticating Records**</u>

The Government will offer self-authenticating business records pursuant to Federal Rule of Evidence 902(11). Specifically, the Government will offer records from entities including U.S. Bank, Paychex, Hard Rock Casino, Fifth Third Bank, and Huntington Bank. All of these records have been certified as a true and correct and as meeting the standards set forth in Federal Rule of Evidence 803(6)(A)-(C) by appropriate custodians from the respective institutions. Pursuant to Rule 902(11), the Government provided notice of intent to offer this evidence to the defendants, and the records were produced in discovery. The records are thus excepted from the rule against hearsay pursuant to Federal Rule of Evidence 803(6) and admissible as self-authenticating documents under Federal Rule of Evidence. 902(11).

The Government will also offer IRS records into evidence at trial pursuant to Federal Rules of Evidence 803(8) and 902(2), which pertain to domestic public documents that are signed and certified. The IRS records will be signed and certified by an IRS records custodian, and, as such, the records are excepted from the rule against hearsay pursuant to Federal Rule of Evidence 803(8) and admissible as self-authenticating documents under Federal Rule of Evidence 902(2). *See Brewer v. United States*, 764 F. Supp 309, 318 (SDNY 1991) (citing *United States v. Neff*, 615 F.2d 1235, 1241 (9th Cir.), *cert. denied*, 447 U.S. 925 (1980); *Schmidt v. IRS*, 717 F.Supp. 763, 764 (D.Kan.1989), vacated on other grounds, 913 F.2d 837 (10th Cir.1990).

### D. <u>**Summary Witness Testimony**</u>

The Government intends to present testimony from IRS Special Agent Meeks near the end of its case-in-chief. Special Agent Meek's anticipated testimony will include summarizing and

explaining admitted tax and bank records, as well as tallying the employment taxes owed by the defendant's business and unreported income earned by the defendant.

Use of a summary witness in a criminal tax case has been recognized by courts across several circuits. *See*, *e.g.*, *United States v. Stierhoff*, 549 F.3d 19, 27-28 (1st Cir. 2008); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005) ("It is well established that the nature of a summary witness' testimony requires that [s]he draw conclusions from the evidence presented at trial.") (internal quotation marks omitted). Further, a summary witness may be used to help the jury organize and evaluate evidence that is factually complex and revealed only in fragments through the testimony of a multitude of witnesses. *See United States v. Baker*, 10 F.3d 1374, 1411 (9th Cir. 1983).

"The key to admissibility is that the summary witness's testimony does no more than analyze facts already introduced into evidence and spell out the tax consequences that necessarily flow from those facts." *See Stierhoff*, 549 F.3d at 27-28 (discussing and affirming summary testimony by an IRS revenue agent). Thus, an IRS agent, testifying as a summary witness, may testify regarding the tax consequences of transactions or events, so long as he or she does not "give a legal opinion that necessarily determines the guilt of a defendant or instructs the jury on controlling legal principles." *United States v. Sabino*, 274 F.3d 1053, 1067 (6th Cir. 2001), *amended on other grounds by* 307 F.3d 446 (6th Cir. 2002) (citation omitted). The Government maintains that such testimony is appropriate in a criminal tax case given the need to present voluminous records and calculate totals for unreported income and taxes due.

### E. Summary Charts and Visual Aids

The evidence in this case spans over multiple years and involves a large volume of documents, communications, bank and casino records. To more efficiently present certain

voluminous or otherwise difficult to review evidence to the jury, the Government intends to use summary charts. Federal Rule of Evidence 1006 permits the admission of summary charts into evidence as a surrogate for underlying voluminous records so long as the summary is accurate, the underlying records are admissible, and the records were made available to the defendant at a reasonable time and place before trial. *See United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998); *United States v. Seelig*, 622 F.2d 207, 214 (6th Cir. 1980) (evidence underlying summary "difficult and . . . inconvenient"); *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979) (evidence need not be so voluminous as to be "literally impossible to examine"). The Government's summary charts will be based on admissible evidence that has been provided to the defendant through counsel.

Alternatively, the Government intends to use these summary charts as visual aids during closing argument and during its case-in-chief to help explain its case to the jury. Federal Rule of Evidence 611(a) governs the use of visual aids. Visual aids are typically used as pedagogical devices either to simplify complex evidence or to assist counsel in the presentation of an argument to the jury. Whether a visual aid is admitted into evidence under Rule 1006 or used as a pedagogical device under Rule 611(a), a cautionary jury instruction may be appropriate.

### F. **Admission of Evidence of Defendant's Expenditures from Business Accounts and Gambling as Evidence of Willfulness**

The Government intends to offer evidence of the defendant's expenditures from business bank accounts during the time period at issue. As described above, while not paying the employment taxes owed by Richie's Restaurants, the defendant spent millions of dollars of Richie's Restaurant funds on personal and business expenses and items other than taxes, including, *inter alia*, gambling. Evidence of these expenditures is properly admissible pursuant to Federal

Rules of Evidence 401 and 403 to show the defendant acted willfully in committing the crime at issue.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is extremely liberal." *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (internal quotation omitted). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *Id.* at 738-39 (6th Cir. 2006).

Evidence of the defendant's spending from business bank accounts is significantly probative of the crimes charged in the Indictment. To prove the defendant violated 26 U.S.C. § 7202, the Government must prove his failure to pay over payroll taxes was willful. *See United States v. Blanchard*, 618 F.3d 562, 569-70 (6th Cir. 2010) (recognizing willfulness as an element of § 7202); *United States v. Brown*, 250 F.3d 580, 584 (7th Cir. 2001) ("Intent is automatically at issue in specific intent crimes."). The Sixth Circuit has previously held that evidence of discretionary expenditures, including gambling, paid from business accounts is admissible evidence of willfulness in a § 7202 prosecution:

> [E]vidence regarding a defendant's ability to pay taxes is pertinent to whether an offense has been committed under § 7202, since it bears on the willfulness of the defendant's failure to pay over withheld tax to the government. If a defendant has made discretionary purchases in lieu of meeting his tax obligations, this is probative of his guilt. While Blanchard contends that the evidence presented was of limited utility in this regard—since the gambling records over-represented the amount of money he gambled and the other expenses demonstrated that he had a 'lower middle class standard of living'—these considerations go to the weight of the evidence, not its admissibility.

*Blanchard*, 618 F.3d at 569-70. The Sixth Circuit thus held that expenditures evidence rendered it more likely the defendants acted willfully (by negating any suggestion they lacked funds or were

unable to pay payroll taxes). Though ability to pay tax is not an element of 26 U.S.C. § 7202, evidence of personal expenditures from business accounts is direct evidence of income the defendant earned. *Blanchard*, 618 F.3d at 572. For the reasons discussed above, this income and the manner in which the defendant spent it is evidence demonstrating his willfulness.

Finally, the evidence is not unduly prejudicial. Under Rule 403, courts exclude otherwise relevant evidence only where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence "cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect '*substantially* outweigh[s]' its probative value." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) (emphasis added) (*quoting* Fed. R. Evid. 403); *see also United States v. Ray*, 549 F. App'x 428, 434 (6th Cir. 2013) (for 404(b) evidence to be excluded based on prejudice, "the effect . . . must not simply be prejudicial, but it must be unfairly prejudicial" (internal quotation marks omitted)). In *Blanchard*, the Sixth Circuit affirmed the admission of gambling and expenditure evidence over a Rule 403 objection, finding "the relevance of Blanchard's spending a comparatively large amount of money on his own entertainment in lieu of paying over taxes to the IRS substantially outweighs the potential for prejudice arising from admission of this evidence." 618 F.3d at 570. To the same effect here, the significant probative value of the defendants' personal spending is not substantially outweighed by the risk of undue prejudice. Thus, Rule 403 does not bar admission of the evidence.

G. **Defendant's Witnesses**

It is unclear whether the defendant intends to call witnesses and if so, whether any of the potential defense witnesses have personal knowledge about the events in question. Testimony about matters not directly relevant to the charged offenses including matters significantly predating or postdating the events in question may fall into character testimony. To the extent the defendant seeks to introduce evidence of good character, the government anticipates it will offer evidence to rebut such testimony consistent with Rule 404(a)(2)(A) of the Federal Rules of Evidence.

H. **Defendant's Testimony**

If the defendant elects to testify, the government anticipates that it may inquire on cross examination regarding specific instances of his conduct in order to attack his character for truthfulness consistent with Rule 608(b) of the Federal Rules of Evidence. Extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) may be offered subject to Federal Rules of Evidence 402 and 403.

III. CONCLUSION

The foregoing is a summary of issues and witnesses the Government expects may arise at trial. If any legal issues arise that have not been covered in this memorandum, the Government respectfully requests permission to file a supplemental memorandum.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Ebunoluwa A. Taiwo
EBUNOLUWA A. TAIWO (DC 4740858)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711

ALEXANDRA K. FLESZAR (LA 36458)
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 972
Washington, D.C. 20004
Phone: (202) 514-5150

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Trial Brief was served this 23rd day of August, 2024, electronically upon counsel of record.

*s/Ebunoluwa A. Taiwo*
EBUNOLUWA A. TAIWO (DC 1030215)
Assistant United States Attorney